## LOUGHNEY v. KLEIN et al.

(Circuit Court of Appeals, Third Circuit. March 22, 1915.)

### No. 1903.

1. PLEADING ⟨⟩157—AFFIDAVIT OF DEFENSE—SUFFICIENCY.

In an action on a party wall agreement, which provided that plaintiff should construct a wall of certain material and a certain thickness, and that defendant might thereafter use the wall upon payment of one-half of the cost thereof, or of so much as was used, an affidavit of defense which merely averred generally that the wall was thicker than was necessary for buildings of the height of those erected, and would have been sufficient for buildings twice that height, is not sufficient, but it should point out specifically wherein the wall constructed differed from that called for by the contract.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 315; Dec. Dig. ⟨⟩157.]

2. PARTY WALLS ⟨⟩8—AGREEMENTS—CONSTRUCTION.

Under a party wall agreement, which provided that one of the parties should construct a wall of a certain thickness and material, and that the other should have the right to join thereto a building for the whole extent of the wall, or any part thereof, upon payment of one-half of the value of the wall, or so much thereof as should be used, the second party is required to pay one-half the value of the entire thickness of the wall for that part which was used by the building subsequently constructed, though the wall was thicker than was necessary for buildings of the height of those constructed.

[Ed. Note.—For other cases, see Party Walls, Cent. Dig. §§ 24–41; Dec. Dig. ⟨⟩8.]

3. PARTY WALLS ⟨⟩8—AGREEMENTS—CONSTRUCTION—"VALUE"—"COST."

Where a party wall agreement required one party to pay one-half the value of the wall, and a subsequent agreement provided for the crediting of a certain amount upon the one-half of the cost of the party wall mentioned in the former agreement, the words "value" and "cost" were used interchangeably, and the liability of the second party is measured by the cost of the wall.

[Ed. Note.—For other cases, see Party Walls, Cent. Dig. §§ 24–41; Dec. Dig. ⟨⟩8.

For other definitions, see Words and Phrases, First and Second Series, Cost; Value.]

In Error to the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson, Judge.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by Leo M. Klein and another against Mary Devlin Loughney. Judgment for plaintiffs, and defendant brings error. Affirmed.

Charles A. Woods, Leo M. Dillon, and J. Linus Moran, all of Pittsburgh, Pa., for plaintiffs in error.

Charles H. Sachs, of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. This dispute calls upon the court to determine how much the defendant below is bound to contribute toward the cost of a party wall. She stands in the place of her husband, P. J. Loughney, now deceased, while the plaintiffs, Klein and Jackson, represent the interest of Henry Phipps—Loughney and Phipps having formerly been owners of adjoining land in the city of Pittsburgh. The facts are not in controversy.

On May 15, 1901, Phipps was about to erect a building on his lot, which measured 72.41 by 110 feet; Loughney's lot being about 23 feet by 110. On that date they made two written agreements, the first reciting as follows, inter alia:

"Whereas, the said Henry Phipps is about to erect on his own lot aforesaid, and along the dividing line between the above-mentioned lots, a brick building extending from Penn avenue to Exchange alley, six stories high, of steel, stone, and brick construction, the foundation walls to be 18 inches thick up to the first story, and 13 inches thick from the first story to the top of the building."

Thereupon the agreement fixed the location of the dividing line— "which dividing line shall be the center of said party wall"—and then went on to provide:

"The said Henry Phipps does hereby covenant, promise, grant, and agree that the said P. J. Loughney, his heirs and assigns, shall and may at all times hereafter have the full and free liberty and privilege of joining to said party wall of the said building, so to be erected by the said Henry Phipps, as well below as above the surface of the ground and along the whole length or any part of the length thereof, any building which he or they or any of them may desire or have occasion to erect on the said lot along the dividing line aforesaid, and to use and enjoy the said wall or any part thereof as a wall of the building or buildings so to be erected, and to sink the joists of said building or buildings into the wall aforesaid to a depth of 6 inches and no further.

"Provided, always, nevertheless, and on this express condition, that the said P. J. Loughney, his heirs and assigns, as aforesaid, before proceeding to join any other buildings to the said wall, and before making any use thereof or breaking into the same, shall pay or secure to be paid unto the said Henry Phipps, his heirs and assigns aforesaid, the full moiety or one-half (½) part of the value of said wall, or so much thereof as shall be taken or used as aforesaid."

The other writing, described as a "supplemental agreement to the foregoing agreement between Henry Phipps of the first part and P. J. Loughney of the second part, dated May 15, 1901," added this provision:

"That in case the said P. J. Loughney shall at any time hereafter erect upon his lot a steel frame building, any additional cost that he may incur over and above that of connecting to ordinary brick wall in order to attach the

frame of his building to the steel frame of the party wall, erected by the said Henry Phipps on his adjoining property, shall be taken and allowed as an offset or credit upon the one-half (½) of the cost of the party wall mentioned and referred to in the foregoing agreement to be paid by the said P. J. Loughney for the party wall provided for in said agreement."

Phipps put up his building, and 12 years afterward, in August 1913, Mrs. Loughney (who had become the owner of her husband's lot under his will) erected a six-story steel frame building, and used the whole length and height of the wall above the surface of the ground. Below the surface, however, she only used "a portion of the area of said wall * , * * equal to two-thirds of the area thereof." She agreed that the wall had cost Phipps $18,131.50, but denied her liability to pay one-half of this sum, averring:

"That for reasons unknown to defendant [the wall] was constructed by said Henry Phipps of sufficient strength to support two adjoining buildings of twelve stories or more in height, and so much stronger and more costly than a structural steel wall amply strong enough as required by law and as ascertained by the experience of architects and constructing engineers to support the buildings of six stories in height similar to the buildings now constructed upon and using said wall."

She averred further that she was liable—

"for only one-half of the cost of a wall sufficient as required by law, usage, and custom to support two six-story buildings of the character erected by defendant upon her property, to wit, the sum of $5,279.92, and not one-half of the cost of such a wall as erected by Henry Phipps, and not one-half the cost of a wall necessary to support two twelve-story buildings, that being the character of the wall erected by said Henry Phipps."

She also claimed, and the plaintiffs conceded, a credit of $600 under the supplemental agreement for attaching her steel frame to the frame of the Phipps building, and a credit of $161.50 under the first agreement for the cost of so much of the foundation as she had not used. The single question is whether the agreements obliged her to pay more than the sum she admits to be due. The District Court held her liable for half the admitted cost of the wall, less the two credits referred to, and entered judgment therefor.

[1-2] In our opinion this decision was correct. The question arose on the plaintiffs' motion for judgment for want of a sufficient affidavit of defense, and in discussing the sufficiency of the affidavit and the meaning of the contract the District Judge (Thomson, J., whose opinion has not been reported) gave the following reasons:

"Defendant's averments that the wall was constructed of sufficient strength to support two adjoining buildings of twelve stories or more in height, etc., as above quoted, do not meet the requirements of an affidavit of defense. They are entirely too vague and general in character. If a different wall were erected than that called for in the contract, it was the clear duty of the defendant to point out specifically wherein the wall differed from that specified in the contract. Besides, as the parties specified the kind and thickness of the wall to be erected, it is to be presumed that they knew what they wanted and provided accordingly. It may well be that both parties intended that the wall should be strong enough to support a much larger building than that about to be erected. They may have been wisely providing for the future. In the absence of anything in the contract to the contrary, or any averment seeking to alter or modify it, I am bound to assume that the agreement in

relation to the wall, its height, depth, thickness, and kind of construction, expresses accurately the intention of the parties in relation thereto.

"If this be true, then in what proportion were the parties to pay? Turning again to the contract, we find that Loughney, the adjoining owner, was given the free liberty and privilege of joining to said wall any building which he, his heirs or assigns, might have occasion to erect, with the condition, however, that before doing so he or they 'shall pay, or secure to be paid,' unto the said Henry Phipps, his heirs and assigns aforesaid, the full moiety, or one-half part, of the value of said wall, or of so much thereof as shall be taken or used as aforesaid.'

"I would understand this to mean the one-half of the value of the whole wall, if the whole wall were used; or, if not, the one-half of the value of the wall actually used should be paid by the adjoining owner.

"The latter would be in no position to complain that the wall was thicker, and occupied more of his ground, or was more expensive than he needed for the purposes of his building, because it was so constructed by virtue of his contract.

"If this agreement stood alone, I would be disposed to hold that the word 'value' was intended to refer to the cost of the wall, as the best evidence of its value, perhaps, would be its cost of construction. If the parties intended that the adjoining owner should pay a sum less than one-half the cost, they would certainly have pointed out some method by which such sum could be ascertained, which they did not do. But the supplemental agreement seems to remove any doubt which might otherwise exist. [Quoting it.]

" * * * The word 'value' in the first agreement, and the word 'cost' in the second, seem to be used by the parties interchangeably, or as synonymous terms. I therefore conclude that under the agreement of the parties, Loughney, the adjoining owner, was to pay to the first builder one-half of the cost of the party wall, if the whole of the wall was used, and that the right of recovery is in the plaintiffs."

Nothing need be added to this reasoning. The controversy does not arise under a statute regulating party walls, but under a contract by which both parties were bound, and the case was decided as soon as the court ascertained the meaning of the agreement. We would have no right to vary its terms, even if it seemed likely that Loughney might have made a better bargain. The case stands on its own facts, and we need not consider the two decisions that are cited in the brief for plaintiff in error, Sauer v. Monroe, 20 Pa. 219, and McNichol v. Dintenfass, 38 Pa. Co. Ct. R. 420.

The judgment is affirmed.